```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/11/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

KAYF DEVAUGHN,

                              Defendant.

No. 21 Cr. 308 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

The Government charged Defendant Kayf Devaughn with a two-count indictment for possession of fentanyl with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Presently before the Court is Defendant's motion to suppress evidence recovered from (i) a teal iPhone, and (ii) a black BLU smartphone seized from his residence during a parole search. (ECF No. 18.) For the following reasons, the Court DENIES Defendant's motion.

## BACKGROUND

### I. Factual Background

In 2017, Defendant was convicted in Dutchess County Court for attempted criminal possession of a weapon in the second degree and sentenced to thirty months' imprisonment followed by a three-year term of parole release. Following his imprisonment, on December 12, 2019, Defendant began his parole release under the supervision of Probation Officer ("PO") Veronica Ahumada of the New York Department of Corrections and Community Supervision. (*See* Caldera Aff., Exs. A and B, ECF Nos. 19-1 and 19-2). Defendant's parole conditions required him to "permit [his] [PO] to visit [him] at [his] residence and/or place of employment and . . . permit the search and inspection of [his] person, residence and property." (*See id.*, Ex. A.) The parole conditions also required him to "not own, possess, or purchase any . . . firearm of any type

without the written permission of [his] [PO]," nor to "use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization." (*Id.*)

In October 2020, Detective R. Haberski of the City of Poughkeepsie Police Department ("CPPD") received information from a confidential informant ("CI") that Defendant was selling narcotics and in possession of a firearm. (*See id.*, Ex. C, ECF No. 19-3.) In November 2020, the CI forwarded the CPPD several videos which appeared to show the packaging of narcotics, as well as prepackaged narcotics. The CI relayed to the CPPD that the videos were recorded in Defendant's bedroom at his residence. The CI also forwarded another clip that showed a firearm in the passenger-side door pocket of a vehicle, for which he provided the CPPD with identifying information for Defendant's vehicle. (*Id.*) In December 2020, the CPPD requested licensed plate reader data for such vehicle. (*Id.*) On January 12, 2021, the CPPD contacted PO Ahumada, provided her details about the investigation into Defendant, and forwarded the videos the CI provided. (*Id.*)

On January 28, 2021, PO Ahumada and other parole officers conducted a search of Defendant's residence. (*Id.*) On entering the residence, the parole officers encountered Defendant, another adult male, and two children. (*See United States v. Devaughn*, No. 21-MJ-2867, Compl. ¶ 6(b), ECF No. 1.) PO Ahumada observed Defendant exiting one of the residence's three bedrooms, allegedly his own. (*Id.* ¶ 6(c).) Inside a closet in Defendant's bedroom, the parole officers recovered a black and a gray backpack containing, among other things: (i) approximately 300 grams of a substance later confirmed to contain fentanyl; (ii) a plastic bag containing approximately 70 round blue pills; (iii) a plastic bag containing approximately 304 multi-colored car-shaped pills; (iv) two digital scales; and (v) packaging material. (*Id.* ¶ 6(d).) In a laundry basket within reach of that same closet, the parole officers recovered a Polymer 80 Inc., model

PF940C 9mm caliber handgun with no serial number, containing a magazine loaded with 10 rounds of ammunition. (*Id.* ¶ 6(e).)

The parole officers also recovered two cellphones from Defendant's bedroom. Specifically, they recovered a teal iPhone that was on the floor near the bed, whose protective case contained an identification card bearing Defendant's name, and a black BLU cellphone located on the bed. (*Id.* ¶ 6(c).) The parole officers photographed all recovered evidence and then turned it over to the CPPD. (*See* Caldera Aff., Ex. C.) The parole officers took Defendant into custody for suspected violation of the terms of his parole. (*See* Caldera Aff., Exs. D and E, ECF Nos. 19-4 and 19-5).

## II. Procedural Background

On February 19, 2021, United States Magistrate Judge Judith C. McCarthy issued a warrant for the two cellphones. (*See* Caldera Aff., Ex. F, ECF No.19-6). On March 15, 2021, United States Magistrate Judge Paul E. Davison issued a complaint, charging Defendant with possession of fentanyl with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*See United States v. Devaughn*, No. 21-MJ-2867, Compl., ECF No. 1.) On March 17, 2021, Defendant made his initial appearance before Judge Davison on the Complaint and was remanded to federal custody at the Dutchess County Jail. (*See United States v. Devaughn*, No. 21-MJ-2867, ECF No. 2.) On May 10, 2021, a Grand Jury sitting in this District returned an indictment against Defendant based on the same incident described herein. (Indictment, ECF No. 1.) On December 7, 2021, Defendant filed the instant motion to suppress (ECF No. 18.), along with supporting exhibits (ECF No. 19) and a memorandum in support ("Motion," ECF No. 20.) The Government filed its opposition on December 9, 2021. ("Response in Opposition," ECF No. 21.)

**LEGAL STANDARD**

### I. Motions to Suppress

"The Government bears the burden of proof" on a motion to suppress. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008). The Government must justify the constitutionality of its actions "by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Evidentiary hearings on motions to suppress are only required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact [exist]." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). A defendant may not rely on "bald assertions," and "[w]ithout specification of the factual basis" that supports suppression, "the district court is not required to have a hearing." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998); *see also United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("A hearing is not required if the defendant's statements are general, conclusory or based on conjecture.").

### II. Parole Searches

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001). "Warrantless searches are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically

established and well-delineated exceptions.'" *United States v. Jaiman*, 2018 WL 1870483, at *6 (S.D.N.Y. Apr. 17, 2018) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

"The Supreme Court has acknowledged the need for exceptions to the warrant and probable cause requirements of the Fourth Amendment where an administrative agency has 'special needs, beyond the normal need for law enforcement.'" *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks and citation omitted)). One such exception exists in "[a] State's operation of a probation system . . . [which] presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin*, 483 U.S. at 873–74.

Considering these special needs, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000). Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that "the community is not harmed by the [parolee's] being at large." *Griffin*, 483 U.S. at 875; *see also Reyes*, 283 F.3d at 458 (cleaned up) (a parole officer, "of necessity, must have investigative powers to gather information about the parolee's activities, environment, and social contacts so as to ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society."); *People v. Huntley*, 43 N.Y.2d 175, 181–82 (N.Y. 1977) (explaining that a parole officer's duties include "detect[ing] and prevent[ing] parole violations for the protection of the public from the further commission of crimes").

In sum, "[b]ecause a search undertaken by a parole officer of a parolee to detect parole violations is reasonably related to the parole officer's duties, such a search is permissible under

the Special Needs framework and accordingly comports with the Fourth Amendment." *United States v. Braggs*, 5 F.4th 183, 188 (2d Cir. 2021) (citations and quotations omitted).

## DISCUSSION

As a threshold matter, the Court notes that the parties do not dispute any of the facts currently on record. While Defendant purports to ask the Court to schedule a fact-finding hearing for his motion (Mot. at 6), he demonstrates no material dispute of fact supported by a specific factual basis upon which a suppression hearing is warranted. Indeed, a review of the parties' briefing reveals that the parties' disagreement merely concerns whether the seizure of the phones was *legally* justified based on the present record. Therefore, the Court finds that a suppression hearing is not warranted here.

By his motion, Defendant advances two arguments to suppress the evidence recovered from the two cellphones. First, he argues that the seizure of the phones was unreasonable under the Fourth Amendment because it was not rationally or reasonably related to a parole officer's duties of supervision and prevention of further crime. (Mot. at 3–4.) And second, he argues that the parole officers improperly conducted the search in January 2021 based on "stale" information provided in October 2020. (*Id.* at 5.) The Court addresses those arguments in that order.

### I. The Phones' Seizure Was Rationally and Reasonably Related to a Parole Officer's Duties of Supervision and Prevention of Further Crime

Defendant argues that the parole officers seized the phones merely to secure contraband or evidence at the behest of the CPPD in furtherance of its own independent criminal investigation. (Mot. at 3–4.) In other words, Defendant argues that the parole officers' seizure of the phones had no bearing in the alleged purpose of the parole search: to recover potential evidence of Defendant's suspected parole violations. (*Id.* at 4–5.) Hence, the phones' seizure is not reasonably or rationally

related to the prevention or detection of future crimes as the parole officers had already seized the drugs and the firearm. (*Id.* at 5.)

In response, the Government contends that the seizure of the phones was rationally and reasonably related to a parole officer's duties of supervision and prevention of further crime because the parole officers found the phones in plain view where they found other evidence showing that Defendant violated the express conditions of his parole. (Resp. in Opp'n at 7.) Further, as the information they received concerning Defendant's parole violations included videos recorded in his bedroom, the parole officers had reasonable grounds to seize the phones for additional evidence in the form of videos of Defendant's drug activity and communications in furtherance thereof. (*Id.* at 8.) After due consideration, the Court agrees with the Government.

The Second Circuit has consistently "held that police officers may coordinate with parole officers to conduct a search of a parolee's home. Police officers are permitted to participate in probation-related searches as a 'coordinated effort' between agencies where 'the probation officers are pursuing legitimate probation-related objectives.'" *Black v. Petitinato*, 761 F. App'x 18, 21–22 (2d Cir. 2019) (citing *Reyes*, 283 F.3d at 464); *see also United States v. Lambus*, 897 F.3d 368, 404–05 (2d Cir. 2018) ("the fact that a new prosecution may ensue is not a sign that the parole officer was not pursuing his normal duties."); *United States v. Harris*, No. 19 Cr. 746 (NSR), 2021 WL 1512724, at *5 (S.D.N.Y. Apr. 16, 2021) (rejecting "stalking horse" argument based on well-settled Second Circuit precedent).

The Second Circuit has also previously upheld parole searches based on confidential source information suggesting that a parolee was violating the conditions of parole. For example, in *United States v. Braggs*, 5 F.4th 183 (2d Cir. 2021), a parole officer received notice of an anonymous tip suggesting that the defendant possessed guns, in violation of his parole conditions.

At that point, under the Special Needs Doctrine, the Second Circuit held that "the search of Braggs's house was reasonably related to the performance of the DOCCS officers' duties" and that parole officers "were constitutionally permitted to search the house to determine whether Braggs was complying with the relevant condition." *Braggs*, 5 F.4th at 188; *see also United States v. Barner*, 666 F.3d 79, 85–86 (2d Cir. 2012) (holding that once a parole officer received information that, "if true, would have constituted criminal parole violations . . . the ensuing search satisfied the reasonable relationship requirement . . . because it was performed in direct response to information that [the parole officer] obtained and that she had a duty to investigate further."); *United States v. Newton*, 369 F.3d 659, 666 (2d Cir. 2004) ("[O]nce the parole officers in this case received information that Newton had a gun at his residence and had threatened his mother and her husband, it was a reasonable exercise of their parole duty to search Ms. Wright's apartment.").

Further, in conducting a parole search, "[a]n item that is observed in plain view may be seized if the probation officer has reasonable grounds to believe that the item is contraband or constitutes evidence of a violation of a condition of release." *Reyes*, 283 F.3d at 468 (cleaned up); *see also United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999) ("Under the 'plain view' exception [to the warrant requirement], 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'"). Either a parole officer or other law enforcement officer may seize such an item. *See Reyes*, 283 F.3d at 470 ("there is nothing improper about a probation officer adopting a more modest or cautious approach to seizures than

8

is actually permitted by law—one that permits probation officers to rely on law enforcement officers to take hold of the contraband or, indeed, to arrest the person under supervision.").

With that in mind, the Court agrees with the Government that the phones' seizure was rationally and reasonably related to a parole officer's duties of supervision and prevention of further crime. First, the parole officers conducted the parole search based on the information the CI provided the CPPD that Defendant was involved in repeated narcotics activity and firearms possession. Specifically, the CI informed the CPPD that Defendant was making regular, weekly trips to Massachusetts to pick a large quantity of narcotics, using his residence to package drugs, and that he possessed a firearm—all conduct that violates the express conditions of his parole. (*See* Caldera Aff., Ex. C.) Such information was corroborated by the video evidence the CI forwarded to the CPPD. (*Id.*) As such, the parole officers' search was reasonable under the Fourth Amendment to recover any evidence showing that Defendant was violating the express conditions of his parole.

And second, the parole officers were lawfully authorized to seize the phones because (1) the phones were in plain view inside the same bedroom where they found the drugs and firearm and in close proximity of them; and (2) the videos the CI forwarded to the CPPD provided reasonable grounds for the parole officers to believe the phones contained additional evidence of Defendant's ongoing parole violations in the form of other videos and communications with associates.

II. **The Parole Officers Conducted a Timely Parole Search**

Finally, Defendant argues that the parole officers improperly conducted the search in January 2021 based on "stale" information that the CI and CPPD provided in October 2020. (Mot. at 5.)  But the Court readily rejects Defendant's contention because, as the Government correctly indicates, "courts in this Circuit have generally found that the 'information necessary to support a

finding of probable cause should be no older than one year.'" (Resp. in Opp'n at 9 (quoting *United States v. Bazemore*, No. 20 CR. 573 (ER), 2021 WL 1719233, at *4 (S.D.N.Y. Apr. 30, 2021) (collecting cases).) As the record shows, the CI provided the information and forwarded the videos to the CPPD in October and November 2020, which in turn prompted the CPPD to request license plate reader data on Defendant's vehicle on December 2, 2020, and all of which culminated in the parole search after the CPPD informed PO Ahumada of Defendant's parole violations. (*See* Caldera Aff., Ex. C.)

Besides, the parole officers here conducted the search based on Defendant's regular, weekly trips to Massachusetts to pick up large quantities of narcotics, which entails "continuing conduct or . . . ongoing activity, as contrasted with isolated instances of illegal acts," for which "the passage of time between the last described act and the presentation of the application becomes less significant." *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981); *see also United States v. Feola*, 651 F. Supp. 1068, 1090–91 (S.D.N.Y. 1987) ("Narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.") *aff'd,* 875 F.2d 857 (2d Cir. 1989)). Furthermore, the parole officers learned that Defendant possessed a handgun, "the type[ ] of property that can reasonably be expected to be kept in a [d]efendant's residence for an extended period of time." *Harris*, 2021 WL 1512724, at *4.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 18.

Dated: January 11, 2022
      White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE